[No. B025689. Second Dist., Div. Six. Feb. 16, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM MARTIN RAVENSCROFT, Defendant and Appellant.

## COUNSEL

Creig Alan Dolge for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John R. Gorey, Deputy Attorney General, Thomas W. Sneddon, Jr., District Attorney, and Gerald McC. Franklin, Deputy District Attorney, for Plaintiff and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Through a "slow plea"[1] the court below convicted William Martin Ravenscroft of three counts of second degree burglary, among other crimes. Ravenscroft committed the burglaries by surreptitiously stealing and inserting the automatic teller machine (ATM) card of his traveling companion, Barbara Ann Lewis, in two ATM's and punching in her personal identification number, which he had previously noted, on the ATM keypads in order to withdraw funds from her account.

The sole issue on appeal is whether his insertion of Lewis's ATM card in the ATMs, mounted inside the banks and secured flush with the exterior walls of those banks, constitutes a sufficient entry of a building to support a conviction for burglary. We hold that it does and affirm the conviction.

### DISCUSSION

It appears that this is a case of first impression. We are called upon to examine the scope of the terms "building" and "entry," for the purpose of California Penal Code section 459, which defines the crime of burglary in this state. Penal Code section 459 states that "[e]very person who enters any

---

[1] Ravenscroft waived his right to jury trial. He submitted the case on the preliminary hearing transcript, on additional evidence received at the hearing of a Penal Code section 995 motion to set aside the information and on other documentary evidence related to some prior convictions. The court received the additional clarifying evidence pursuant to a motion made under Penal Code section 995a, subdivision (b)(2).

. . . shop, . . . store, . . . or other building, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."

■ The enactment of Penal Code section 459 in 1872 marked the beginning of the liberalization of proof required to obtain a conviction for burglary. At common law, before 1850, conviction for burglary required proof of the breaking and entering of a dwelling house of another in the nighttime with the intent to commit a felony therein. (See Comment, *Criminal Law— Development of the Law of Burglary in California* (1951) 25 So.Cal.L.Rev. 75 (hereafter *Law of Burglary*).) The enactment of Penal Code section 459, and subsequent amendments thereto, eliminated the need to prove all of the common law elements except entry into a building or other structure with larcenous intent. (See *Law of Burglary, supra,* at pp. 75-76.) Today, the essential definition of this crime in California is an unlawful entry into a building or other structure. (*Id.,* at p. 76.) The meaning of these remaining elements has been broadly construed by the courts.

### The requirement of entry into a building or structure

■ Ravenscroft contends the ATM's he used are not buildings and therefore cannot be the subject of a burglary. He argues they are merely machines which are not enclosed on all four sides and which do not have a roof. He points to *People* v. *Gibbons* (1928) 206 Cal. 112 [273 P. 32], as authority for this argument. *Gibbons* is not persuasive.

In *Gibbons,* the defendant took some aluminum from a storage bin which was completely open on one side. The open side faced a fenced yard. (*People* v. *Gibbons, supra,* 206 Cal. at p. 113.) Even though " '. . . in this state the statutory definition of burglary is much more comprehensive than . . . at common law . . . ,' " the majority held that this bin did not come within the purview of Penal Code section 459. (*Id.,* at pp. 113-114.)

The *Gibbons* court contrasted that open storage bin with the burglary of a shoe store showcase in *People* v. *Franco* (1926) 79 Cal.App. 682 [250 P. 698]. In *Franco,* the defendant broke into a shoe store showcase which lined the walls and sides of an open staircase which led from the sidewalk towards the store entrance. This showcase was outside the store proper and one could not enter it from inside the store. (*Id.,* at p. 684.) The court deemed the entry into the showcase sufficient to support the burglary conviction since the showcase was under the roof of the shoe store and was therefore, in legal effect, a part of the store. (*Ibid.*; see also *People* v. *Jackson*

(1933) 131 Cal.App. 605, 606-607 [21 P.2d 968], in accord, involving a showcase inside of and attached to the building in which it was housed.)

These ATM's are analogous to the showcases in *Franco* and *Jackson*. They are firmly affixed and attached to the inside of the bank and are covered by the roofs of the banks. The fact that ATM panels contain slots for ATM cards does not render them completely open on one side, like an open storage bin. (See *People* v. *Gibbons, supra,* 206 Cal. 112.) This ATM panel constitutes a part of the wall of the bank, forming an enclosure far more impervious to entry than structures like telephone booths, which also may be the subject of a burglary. (See *People* v. *Miller* (1950) 95 Cal.App.2d 631, 634 [213 P.2d 534]; *People* v. *Brooks* (1982) 133 Cal.App.3d 200, 204-206 [183 Cal.Rptr. 773], and cases listed therein.)

*The requirement of an entry*

■ Ravenscroft further contends that although his insertion of an ATM card into these ATM's activated the process of obtaining money, it does not constitute an entry under Penal Code section 459 since he did not violate the air space of the bank buildings and because he had no control over the card while it was in the machines. We disagree.

The insertion of an ATM card to effectuate larcenous intent is no less an entry into the air space of a bank as would be the use of any other tool or instrument. Although the California Penal Code does not define "entry" for the purpose of burglary, the California courts have found that a burglary is complete upon the slightest partial entry of any kind, with the requisite intent, even if the intended larceny is neither committed nor even attempted. (*People* v. *Walters* (1967) 249 Cal.App.2d 547, 550-551 [57 Cal.Rptr. 484]; *People* v. *Osegueda* (1984) 163 Cal.App.3d Supp. 25, 31-32 [210 Cal.Rptr. 182]; also see 3 Wharton's Criminal Law (14th ed. 1980) § 334, p. 205.) By pushing Lewis's card into an ATM's slot, the defendant completed the crime. Further control of the card is unnecessary.

Ravenscroft argues that *Walters* and *Osegueda, supra,* should not apply to this case since they involve more traditional violations of air space with more traditional burglars' tools. In *Walters,* the police caught the defendants perched on the roof of a market next to a vent shaft whose lid had been pried off. The vent covered a shaft leading to a grille which was flush with the ceiling of the market's restroom. Various paraphernalia such as pliers,

screwdrivers, a crowbar and rope were strewn about. (*People* v. *Walters, supra,* 249 Cal.App.2d at p. 550.)

Similarly, in *Osegueda,* the police interrupted the defendants' efforts to bore a hole in the wall of an electronics store after they had removed a section of an outer wall to a cafe bathroom. A hole saw, hacksaw and a crowbar were nearby (*People* v. *Osegueda, supra,* 163 Cal.App.3d at Supp. p. 31.)

The fact that both *Walters* and *Osegueda* involve more traditional methods of burglary is of no moment. ▇ The gravamen of burglary is an act of entry, no matter how partial or slight it may be, with an instrument or tool which is appropriate for the particular instance, accompanied by the proper intent. (*People* v. *Walters, supra,* 249 Cal.App.2d at pp. 550-551; *People* v. *Osegueda, supra,* 163 Cal.App.3d at Supp. pp. 31-32.) One can commit burglary even though the instrument in question is used merely to facilitate entry rather than to complete the larceny. (*Ibid.*) The insertion of a fraudulently obtained ATM card effectuates an entry into a bank's ATM for larceny just as surely as does a crowbar when applied to a vent.

As there is a paucity of California cases which involve an entry analogous to the instant case, we turn to a federal case, *United States* v. *Goudy* (7th Cir. 1986) 792 F.2d 664, whose facts are sufficiently similar so as to be instructive here. In *Goudy,* the defendant attempted to withdraw money from the account of another at a walk-up window facility located a block away from the main bank building by placing a check into the window of the remote facility.

As here, Goudy contended he did not enter the building within the meaning of the statute. The court rejected Goudy's claim, holding that the statute's language reflected legislative intent to make it a crime to enter any part of a bank building with the intent to steal. (*United States* v. *Goudy, supra,* 792 F.2d at p. 674.) That statute states, in pertinent part: "Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank . . . , with intent to commit in such bank . . . or building, or part thereof, so used, any felony affecting such bank . . . or any larceny - [¶] Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." (18 U.S.C. § 2113(a).)

Ravenscroft asserts that although placing a check into a drive-up window violates the air space of a bank, the insertion of an ATM card into an ATM

does not. We disagree. ■■■ An ATM housed within a bank is, even more than a drive-up facility located a block from a bank, an arm of that bank building.

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.

On March 16, 1988, the opinion was modified to read as printed above.