Chief Justice EISMANN,
dissenting.
The sole issue in this case is whether Arreguin’s detached garage is an outbuilding as that term is normally used. Under every single definition of “outbuilding” presented in connection with this case, Arreguin’s detached garage is an outbuilding. There is absolutely no dispute about that. The majority cannot point to a single definition of “outbuilding” that would exclude Arreguin’s garage.
A. It is undisputed that Arreguin’s garage is an outbuilding.
The stock language in the insurance policy provided coverage for separate structures. The applicable provision stated:
Coverage B — Separate Structures
We cover other structures on the residence premises separated from the dwelling, or connected to the dwelling by only a fence, utility line, sidewalk, patio or similar connection.
The policy defined “residence premises” to mean “the one or two family dwelling and separate structures or that part of any other building where you reside, and which is shown in the Declarations.” The declarations described the residence premises as being “11 E 100 N, Blackfoot ID 83221.”
Attached to the policy was a restrictive endorsement stating that the policy did not cover loss to “ALL OUTBUILDINGS.” The endorsement also stated that it was part of the policy and that “[i]t supersedes and controls anything to the contrary.” Thus, the issue is whether Arreguin’s unattached garage would constitute an outbuilding. It clearly would. Every single definition of the word “outbuilding” would include that garage. In fact, both Arreguin and the majority have been unable to find a single definition of “outbuilding” that would not include Arreguin’s detached garage.
“Generally speaking, ... an outbuilding is something which is to be used in connection with a main building, or which is subservient to it, although distinct from it.” 20 Am. Jur.2d Covenants, Etc., § 178 (2005). Black’s Law Dictionary 1128 (Bryan A. Garner ed., 7th ed., West 1999), defines the word “outbuilding” as “[a] detached building (such as a shed or garage) within the grounds of a main building.” Webster’s Third New International Dictionary of the English Language 1601 (Philip Babcock Gove et al. eds., G. & C. Merriam Co.1971), defines the word “outbuilding” as “a building (as a stable or smokehouse) separate from but accessory to a main house.” Webster’s New Word Dictionary of the American Language 1009 (David B. Guralnik ed. in chief, 2d ed., The New World Publishing Co.1970), defines the word “outbuilding” as “a structure, as a garage or barn, separate from the house or main building.” All of these definitions of “outbuilding” would include the detached garage at issue in this ease.
*465 In State v. Marks, 45 Idaho 92, 260 P. 697 (1927), we addressed the definition of the word “outbuilding” when considering the definition of the word “outhouse” in a burglary statute. The words “outbuilding” and “outhouse” were synonymous, and so in defining outhouse we also discussed the definition of outbudding.[3] In State v. Marks, at 45 Idaho 96-97, 260 P. 698-99, we stated as follows:
The words “outhouse” and “outbudding” are defined as follows:
Bouvier: “Buddings adjoining or belonging to dwelling houses; buddings subservient to yet distinct from the principal mansion house, located either within or without the curtdage.”
The Standard Dictionary: “A smader budding standing apart from but appertaining to a main or larger budding or dwelling.”
Webster’s New International Dictionary: “Outhouse: A smad house or budding at a dttle distance from the main house; an outbudding.
“Outbudding: A budding separate from and subordinate to the main budding; an outhouse.”
The Century Dictionary: “A smad house or budding separate from the main building. * * *”
Whde it might be said that the foregoing definitions are susceptible of the construction that an outhouse must be separate and apart from the main budding, the Supreme Court of Idinois, in Huitin v. Klein, 301 Ill. 94, 133 N.E. 660, 20 A.L.R. 230 [1921], in passing on this question, held that:
“From the definitions which have been given, it wid be seen that an outbudding is usuady separate from the main budding, but this does not necessarily imply removal to such a distance as to not be adjacent or abutting and in tangible connection. An outbudding may be budt a few feet or a few inches, only, from the main house. It may be connected with the house by a covered passage. If for convenience the covered passage is edminated, and the out-budding moved or originady constructed immediately against the main budding, it would not therefore cease to be an out-budding. If the outbudding is separated from the main house only by the space of a common wad, this does not necessarily change its character as an outbudding. It is the character of the budding and the use which is made of it which determine whether or not it is an outbudding.”
In State v. Marks, we stated that the word “outhouse,” which was synonymous with the word “outbudding,” was not ambiguous and need not be defined.[4] Every single definition of “outbuilding” cited in State v. Marks would include the detached garage at issue in this case. In State v. Marks, we simply held that a small structure with a door, wads, and ceiling that was attached to the main budding, but from which there was no access into the main budding, could constitute an outhouse or outbudding. Whde there may be some circumstances in which there is a question as to whether an attached structure is an outbudding or part of the main budding, that is not an issue in this case.
B. The majority mischaracterizes the definitions of “outbuilding.”
The majority states, “The various definitions submitted by Farmers demonstrate that ‘outbuddings’ is not necessarily subject to a single reasonable definition. For instance, one source defines ‘outbudding’ to include buddings both adjoining to and separate from the dwelling and a different source defines ‘outbudding’ only as a detached budding.” This statement mischaracterizes the definitions.
Some definitions define it as a detached structure. E.g., Black’s Law Dictionary 1128 (Bryan A. Gamer ed., 7th ed., West 1999), defines the word “outbudding” as “[a] detached budding (such as a shed or garage) *466 within the grounds of a main building.” Other authorities state that an outbuilding can be attached to the main building and still be an outbuilding. E.g., State v. Marks, 45 Idaho 92, 260 P. 697 (1927) (a small, dirt-floored structure that was about three feet deep and four feet wide, that had a sloping roof five feet high in the back and four feet high in the front, and that had no opening into the main building was an outbuilding even though it was attached to the main building). There is no definition stating that an outbuilding must be attached to the main building. Because the garage in this case is unattached, the difference in the definitions does not create any ambiguity here. The unattached garage is an outbuilding under every one of the definitions.
C. The majority opinion conflicts with prior law and produces an incongruous result.
The majority opinion has not pointed to a single definition of “outbuilding” that would exclude the detached garage in this case. It simply holds that because there may be ambiguity as to whether certain other structures would constitute an outbuilding, the word is ambiguous and this case must be remanded. Had the garage been attached to Arreguin’s house, then it would not be an outbuilding under some definitions. The simple fact is that it was not attached to the house and is an outbuilding under every definition. The majority does not explain how this creates any ambiguity in this ease. Where the garage at issue in this case is an outbuilding under every single definition of the term, it is incongruous to hold the term ambiguous simply because reasonable minds could differ as to whether some other structure meets that definition. The issue in this case is whether Arreguin’s detached garage is an outbuilding, not whether someone else’s different structure would be an outbuilding. This case should be resolved based upon its facts, not upon hypothetical facts different from those here. The district court is being reversed not because there is any question as to whether Arreguin’s detached garage constitutes an outbuilding, but because it could possibly be unclear as to whether someone else’s structure does. One would think that when considering the meaning of the word “outbuilding” our prior explanation of that word in State v. Marks would be instructive, unless of course following it would produce the wrong result.
The majority’s holding also conflicts with our prior opinion in Allstate Insurance Co. v. Mocaby, 133 Idaho 593, 990 P.2d 1204 (1999). In Mocaby, the issue was whether a granddaughter was a “resident” of her grandparents’ household and therefore an insured under their homeowner’s insurance policy. The insurer admitted that the word “resident” was ambiguous, but argued that under the circumstances of the case there was no ambiguity that the granddaughter was not a resident of her grandparents’ household. We agreed and affirmed the grant of summary judgment.
D. The failure of the endorsement to specifically refer to Section I of the policy does not render it ambiguous.
The majority also states that the endorsement is ambiguous because it does not expressly identify the part of the policy to which it applies. According to the majority, “Additionally, the fact that the policy’s other exclusions use clear and precise language and indicate to which part of the policy coverage they correspond, further bolsters our conclusion that the ‘Outbuildings’ exclusion is ambiguous.” This statement is illogical.
The endorsement begins, “You and , we agree that this policy does not cover loss by / to: 1. ALL OUTBUILDINGS.” The endorsement obviously modifies what would otherwise be a covered loss. Arreguin had no difficulty understanding to what part of the policy the endorsement applied. In fact, he did not argue on appeal that he did not know to what part of the policy the exclusion applied. That is simply an argument created by the majority in an attempt to justify the result.
More importantly, however, if the endorsement said, “This endorsement applies to Section I, Coverage B — Separate Structures,” how would that clarify the meaning of the word “outbuilding”? It is not used in that *467 part of the policy, nor is there any mention of a garage, detached or otherwise.
E. Conclusion.
In this case, there is absolutely no ambiguity that the detached garage constitutes an outbuilding. It is uncontroverted that Arreguin’s detached garage constitutes an outbuilding under every definition of that word. Ambiguity as to whether Arreguin’s garage is an outbuilding cannot be created simply because it may be unclear whether or not some other hypothetical structures are outbuildings. Therefore, the judgment of the district court should be affirmed.
Justice W. JONES, concurs.

. In the context of the burglary statute, the word "outhouse” was not limited to an outdoor privy.

. "The meaning of the words ‘house’ and ‘outhouse,’ as used in the statute, is generally understood, and, 'when ordinary words and terms are used in the sense in which they are generally understood, it is not necessary to define or explain them.' ” 45 Idaho at 98, 260 P. at 699 (quoting from Branson’s Instructions to Juries (2d Ed.) § 49, p. 77).